UNITED STATES of America,
Plaintiff-Appellee,

v.

Jack W. KARR, Defendant-Appellant.

No. 83–3120.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1984.

Decided Sept. 5, 1984.

Kenneth Parker, Sally R. Gustafson, Asst. U.S. Attys., Seattle, Wash., for plaintiff-appellee.

James Vonasch, Seattle, Wash., for defendant-appellant.

Before PECK \*, WRIGHT, and FARRIS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Karr appeals from a conviction of conspiracy to make a firearm, 26 U.S.C. § 5861, and to receive stolen explosives, 18 U.S.C. § 842(h). The major issue: do *Miranda* warnings sufficiently inform an indicted defendant of the right to counsel under the Sixth Amendment to allow an intelligent waiver of that right? We hold that they do, and affirm.

FACTS

Karr was the middleman in an attempted contract killing of Richard Connors by Connors' ex-wife, Barbara Neyman, and her lover, Dick Inglis. Neyman and Inglis asked Karr to kill Connors in revenge for assaulting them on several occasions. Karr agreed and accepted $1,000 as a down payment on the contract.

Karr called upon an acquaintance, Park Hung Quan, better known as "Harry." Having considered ways to kill Connors, they chose to use dynamite. Harry had procured the dynamite from Michael Shimmin, who stole it from a logging camp.

Harry wired four sticks of dynamite into a bomb, using electrical tape that Karr bought for that purpose. They drove to Connors' house and Harry attached the bomb to Connors' truck. Harry testified that Karr identified the truck and told him how to wire the bomb to its ignition system. The bomb failed to explode and was discovered under the vehicle.

Karr was indicted and on the following morning, was arrested by agents of the Bureau of Alcohol, Tobacco, and Firearms (BATF). The agents asked him to help to incriminate Inglis. Karr agreed, made incriminating statements to the agents, and an incriminating phone call to Inglis. His statements were used against him at trial.

ANALYSIS

A. *The Claimed Violation of Karr's Sixth Amendment Rights*

Karr was arrested following the issuance of a grand jury indictment. The BATF

agents gave the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Karr was informed of the indictment and knew he had a right to counsel. He had been arrested recently on other charges and was familiar with the procedures. He seemed eager to waive his right to an attorney and aid the investigation.

Karr does not claim that the statements were involuntary, *see Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976), nor that he did not adequately understand or waive his rights under *Miranda*. See *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Instead, he argues that the agents violated his right to an attorney under the Sixth Amendment.

■ The Sixth Amendment right to counsel is analytically distinct from the Fifth Amendment right created by *Miranda*. *Rhode Island v. Innis*, 446 U.S. 291, 300 n. 4, 100 S.Ct. 1682, 1689 n. 4, 64 L.Ed.2d 297 (1980). The right attaches "when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment, or preliminary hearing." *United States v. Gouveia*, —— U.S. ——, 104 S.Ct. 2292, 2296, 81 L.Ed.2d 146 (1984). Unlike the Fifth Amendment right, the Sixth Amendment right does not depend on an explicit request by the defendant. *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977).

Karr's rights under the Sixth Amendment attached when he was indicted. The issue is whether he validly waived them.

■ The *standard* for waiver of the Fifth and Sixth Amendment rights to counsel is the same: the waiver must be (1) voluntary, and (2) a knowing and intelligent relinquishment of a known right or privilege. *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981) (Fifth Amendment); *Brewer v. Wil-*

\* Senior Circuit Judge for the Sixth Circuit.

*liams,* 430 U.S. at 404, 97 S.Ct. at 1242 (Sixth Amendment). Courts have split, however, regarding what *warnings* are required before an indicted defendant can knowingly and intelligently waive the Sixth Amendment right.

The Second Circuit takes the strictest view. It has held that waiver of the right to counsel before trial requires "a clear and explicit explanation of the Sixth Amendment rights defendant is giving up." *United States v. Mohabir,* 624 F.2d 1140, 1150 (2d Cir.1980). *Miranda* warnings alone are insufficient. Further, it has held that the rights must be explained by a neutral judicial officer, not by the prosecutor or agent seeking the waiver. *Id.* at 1153. The officer must show the indictment to the defendant, explain its significance, and highlight the seriousness of the defendant's position. *Id. See also United States v. Brown,* 699 F.2d 585, 588–89 (2d Cir.1983).

No other circuit has adopted this standard. The Fifth and Sixth Circuits have found informed waivers where the defendant has received *Miranda* warnings and has indicated a willingness to talk. *Jordan v. Watkins,* 681 F.2d 1067, 1075 (5th Cir. 1982); *United States v. Brown,* 569 F.2d 236, 238–39 (5th Cir.1978) (en banc); *United States v. Woods,* 613 F.2d 629, 634 (6th Cir.), *cert. denied,* 446 U.S. 920, 100 S.Ct. 1856, 64 L.Ed.2d 275 (1980).

The Seventh Circuit has endorsed a case-by-case approach. *Robinson v. Percy,* 738 F.2d 214 at 222 (7th Cir.1984). It has found waiver where the defendant received *Miranda* warnings and the surrounding circumstances show that he understood his right to counsel. *Id.*

Other circuits have adopted intermediate positions. *See United States v. Payton,* 615 F.2d 922, 924–25 (1st Cir.) (valid waiver where defendant was given *Miranda* warnings and was informed of indictment), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 830 (1980); *United States v. Clements,* 713 F.2d 1030, 1036 (4th Cir.1983) (waiver requires knowledge of indictment), *vacated by an equally divided court,* 728 F.2d 654 (4th Cir.1984) (en banc); *Fields v.*

*Wyrick,* 706 F.2d 879, 881–82 (8th Cir.) (waiver where defendant was given *Miranda* warnings, had previously invoked right to counsel, and had opportunity to consult counsel during interrogation), *cert. denied,* —— U.S. ——, 104 S.Ct. 556, 78 L.Ed.2d 728 (1983).

■ The only Ninth Circuit cases on point indicate that *Miranda* warnings suffice for waiver of the Sixth Amendment right. *United States v. Mandley,* 502 F.2d 1103, 1104 (9th Cir.1974); *Coughlan v. United States,* 391 F.2d 371, 372 (9th Cir.), *cert. denied,* 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968). While these cases were decided before the Supreme Court's recent revival of Sixth Amendment analysis, their reasoning remains sound. A defendant who has been adequately informed of his right to counsel and of the fact that formal judicial proceedings have begun against him may validly waive his Sixth Amendment right to counsel. Karr validly waived his right here.

### B. *Karr's Statements as Offers to Plea Bargain*

■ Karr's contention that his statements should have been suppressed under FRE 410(4) because they arose during plea negotiations is frivolous. He never offered to plead guilty to any charge and never inquired into the authority of the BATF agents to negotiate. Any subjective belief that he might have entertained regarding their authority to negotiate was unreasonable in the circumstances. *See United States v. Pantohan,* 602 F.2d 855, 857 (9th Cir.1979); *United States v. Geders,* 585 F.2d 1303, 1305 (5th Cir.1978) (en banc), *cert. denied,* 441 U.S. 922, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979). *See also United States v. Bernal,* 719 F.2d 1475, 1478 (9th Cir.1983).

### C. *The Exclusion of Karr's Daughter's Testimony*

Karr testified that he never agreed to kill Connors and that he had no knowledge of the explosives. He said that when he real-

ized that Harry and the others were trying to kill Connors, he borrowed money to repay Neyman and withdraw from the conspiracy.

Karr's daughter, Becky Bouvette, corroborated his testimony. She stated that she went with her father to a bar where he met Neyman and tried to give her $1,000. Neyman refused the money. When asked what Karr had said when he offered the money, her response was excluded as hearsay.

Karr argues that Bouvette's testimony was not hearsay because it was "offered to prove only that a statement was made and not the truth of the statement." *M.F. Patterson Dental Supply Co. v. Wadley*, 401 F.2d 167, 172 (10th Cir.1968). He claims the statement was a verbal act relevant to his defense that he withdrew from the conspiracy.

■ We agree. Nevertheless, we will reverse for nonconstitutional error in a criminal case only if it is more probable than not that it affected the verdict. *United States v. Soulard*, 730 F.2d 1292, 1296 (9th Cir.1984).

■ Any error was harmless. The testimony was cumulative and was from an interested witness. Further, Bouvette's testimony could not affect Karr's criminal liability. The record does not reflect whether Karr tried to return the money to Neyman before or after he took Harry to bomb Connors' truck. If before, his subsequent acts showed he did not abandon the conspiracy. If it was later, his "withdrawal" came too late. To avoid complicity in a conspiracy, "one must withdraw before any overt act is taken in furtherance of the agreement." *United States v. Monroe*, 552 F.2d 860, 864 (9th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1069 (1977). In either event, Karr's actions spoke louder than his words.

### D. *The Requested Instructions on the Defense of Duress or Coercion*

Karr claims that the trial court erred by refusing to give a requested instruction on

duress. He testified that Harry threatened his daughter, his mother and himself. Karr's daughter, Bouvette, testified that Harry had threatened her with a gun on one occasion.

■ There are three elements to the duress defense:

(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm.

*United States v. Contento-Pachon*, 723 F.2d 691, 693 (9th Cir.1984). (Citation omitted). A fourth requirement, immediate surrender to authorities upon reaching a place of safety, has independent importance only in prison escape cases. *Id.* at 694–95.

■ Ordinarily the duress defense is submitted to the jury. *Id.* at 693. If the evidence is insufficient to support the defense as a matter of law, however, the court may exclude evidence of the defense or refuse to instruct on its elements. *United States v. Shapiro*, 669 F.2d 593, 596 (9th Cir.1982).

■ The court did not err in refusing to instruct here. Karr did not present a prima facie case of the necessary elements. There was no evidence that Harry made an *immediate* threat. Karr passed up many opportunities to escape and never notified the authorities of Harry's threats.

### E. *Sufficiency of the Evidence*

■ Karr's claim that there was insufficient evidence to convict is frivolous. Contrary to his arguments, the government did not have to show that he *knew* the dynamite was stolen: it had only to show he had "reasonable cause to believe" that it was stolen. 18 U.S.C. § 842(h).

■ Taking the facts in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560

(1979). Karr's knowledge of Harry's prior involvement in criminal activities and his knowledge that Harry was not a licensed dealer in explosives would allow a jury to find that Karr had reasonable cause to believe that the dynamite was stolen.

CONCLUSION

The judgment is affirmed. The mandate will issue immediately.