UNITED STATES of America, Appellee,

v.

Patrick Joseph GREENE, Appellant.

No. 92-3052.

United States Court of Appeals,
Eighth Circuit.

Submitted March 18, 1993.

Decided April 30, 1993.

Dean A. Strang, Milwaukee, WI, argued, for appellant.

Lester A. Paff, Asst. U.S. Atty., Des Moines, IA, argued for appellee.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and KYLE,* District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In early 1992, Patrick Joseph Greene was indicted in federal court in Iowa on five counts of drug-related charges. At trial a few months later, he was convicted on four of those counts and acquitted on one. The trial court subsequently sentenced Mr. Greene to 120 months of imprisonment on each count, the terms to run concurrently. Mr. Greene appeals both his conviction and his sentence.

Mr. Greene appeals his conviction on six grounds—that the exclusion, from the grand jury that indicted him and the venire for the petit jury that convicted him, of persons charged but not convicted of felonies violates the constitutional guarantee of equal protection; that the same exclusion violates the constitutional guarantee of juries selected from a fair cross-section of the community; that the trial court should not have excluded as evidence the fact that Mr. Greene rejected a plea agreement; that the trial court should have suppressed certain statements made by Mr. Greene to an agent of the Drug Enforcement Administration (DEA) during discussions on whether and how much Mr. Greene would cooperate with the government; that the trial court should have declared a mistrial after it struck several hearsay statements that had been conditionally admitted; and that the trial court should have granted a judgment of acquittal on one count of conviction, because the government failed to prove venue on that count. We affirm the trial court with respect to all of these issues ex-

* The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minneso-ta, sitting by designation.

cept for that as to venue. We reverse the trial court on the venue question and remand the case for the entry of a judgment of acquittal as to Mr. Greene's conviction on the count alleging the manufacture of marijuana.

With respect to his sentence, Mr. Greene challenges the trial court's enhancement of base offense by four levels based on a finding that Mr. Greene was an organizer of a criminal activity that involved five or more participants. We affirm the trial court on this question, but remand for resentencing in light of our reversal on the manufacturing count.

## I.

■ The due process clause of the fifth amendment includes a guarantee of equal protection parallel to that in the fourteenth amendment. *See, e.g., Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975). An action that violates the fourteenth amendment guarantee of equal protection when committed by a state actor violates the due process guarantee of the fifth amendment when committed by a federal actor. *See, e.g., Johnson v. Robison,* 415 U.S. 361, 364–65 n. 4, 94 S.Ct. 1160, 1165 n. 4, 39 L.Ed.2d 389 (1974). Both grand juries and the venires for petit juries are subject to an equal protection requirement with respect to the method of their selection. *See, e.g., Cobbs v. Robinson,* 528 F.2d 1331, 1334 (2d Cir.1975), *cert. denied,* 424 U.S. 947, 96 S.Ct. 1419, 47 L.Ed.2d 354 (1976) (grand juries), and *Batson v. Kentucky,* 476 U.S. 79, 85–86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986) (petit juries).

Under federal law, each federal district court is to have a plan for random selection of grand jurors and the venire of petit jurors. *See* 28 U.S.C. § 1863(a). Federal law automatically excludes, however, certain classes of persons from eligibility for service as federal jurors. *See* 28 U.S.C. § 1865(b). One of those classes is persons who have a charge pending against them for the commission of a felony. *See* 28 U.S.C. § 1865(b)(5).

Mr. Greene contends that this exclusion is not rationally related to a legitimate governmental purpose and therefore violates his equal protection rights. *See, e.g., Weber v. Aetna Casualty and Surety Co.,* 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768 (1972). He makes multiple arguments in this regard. First, he offers several reasons why differentiating in juror eligibility between those who have been charged but not convicted and others who have not been charged contributes nothing toward the likelihood that jurors will be of unquestionable integrity. (The statute also excludes those convicted of felonies whose civil rights have not been restored, but Mr. Greene does not challenge that exclusion.) Second, Mr. Greene asserts that the exclusion of those who have been charged but not convicted tends to eliminate blacks disproportionately from juror pools. (Evidence to this effect was presented in the trial court, was accepted as true by the trial court, and is evidently not seriously disputed by the government.)

With respect to the integrity of jurors, Mr. Greene argues, in essence, that it is irrational to exclude persons who have merely been accused of a felony when persons actually convicted of one are eligible to serve if their civil rights have been restored. *See* 28 U.S.C. § 1865(b)(5). Mr. Greene also asserts that if unquestionable integrity of jurors is the goal, the exclusion of all persons accused or convicted of certain felonies is unnecessary, since many felonies (traffic offenses, for instance) do not implicate concerns relating to the truthfulness of the person charged or convicted. *See,* in a related vein, Fed. R.Evid. 609(a)(2). Finally, Mr. Greene argues that the exclusion of persons merely accused of a felony is offensive to the presumption of innocence given to criminal defendants. Even under a test requiring only a rational relationship between the exclusion and the legitimate governmental purpose of assuring the unquestionable integrity of jurors, then, Mr. Greene argues that the exclusion violates the constitutional guarantee of equal protection.

■ Several appellate courts have held, however, that the exclusion from juror eligibility of persons charged with a felony is rationally related to the legitimate governmental purpose of guaranteeing the probity of jurors. *See, e.g., United States v. Fox-*

*worth,* 599 F.2d 1, 4 (1st Cir.1979); *United States v. Test,* 550 F.2d 577, 594 (10th Cir. 1976) (*en banc* ); and *United States v. Lewis,* 472 F.2d 252, 256 n. 4 (3d Cir.1973); *see also* H.R.Rep. No. 1076, 90th Cong., 2d Sess., *reprinted in* 1968 *U.S.Code Cong. and Admin.News* 1792, 1796. The trial court in this case found that the exclusion was "rationally related to the purpose of trying to achieve a reputable and reliable jury ... whose judgment society can respect."

We agree with the other appellate courts that have ruled on this question and with the trial court in this case. We believe, furthermore, that it is rational to assume that persons currently facing felony charges may be biased against the government; we therefore hold that the exclusion of those persons from eligibility to serve as grand jurors or petit jurors in criminal trials is rationally related to the legitimate governmental purpose of creating a pool of jurors likely to give unbiased consideration to the evidence presented. We also note that a very large percentage of persons charged with felonies are eventually convicted; recognizing this fact in the context of devising a method to choose jurors who are likely to be unbiased does not, we believe, conflict with the respect we give to the presumption of innocence once a particular defendant is brought to trial.

■ As to the racial impact of the exclusion, Mr. Greene concedes that disparate impact alone is insufficient to trigger the strictest level of scrutiny. *See, e.g., Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 264–66, 97 S.Ct. 555, 563–64, 50 L.Ed.2d 450 (1977), and *Washington v. Davis,* 426 U.S. 229, 239, 242, 245, 247–48, 96 S.Ct. 2040, 2047, 2049, 2050, 2051, 48 L.Ed.2d 597 (1976). He argues, nonetheless, that the fact that the impact of the exclusion is disproportionately high on blacks should precipitate some intermediate standard of review—*i.e.,* one that is more "exacting" than whether the exclusion is rationally related to a legitimate governmental purpose. Under such a standard, he contends, the exclusion must fall, since the governmental interest in the unquestionable integrity of jurors could be served just as well by the use of strikes for cause.

Mr. Greene is fighting an uphill battle on this question, since it has been addressed many times by the courts. In relation to statutes that are facially race-neutral (as this one is), the Supreme Court has repeatedly applied the rational relationship test unless some evidence of purposeful intent to discriminate has been shown. *See, e.g., Village of Arlington Heights,* 429 U.S. at 263, 264–66, 97 S.Ct. at 562, 563–64; *Washington,* 426 U.S. at 246, 96 S.Ct. at 2050–51; and *Jefferson v. Hackney,* 406 U.S. 535, 546, 548–49, 92 S.Ct. 1724, 1731, 1732–33, 32 L.Ed.2d 285 (1972). Mr. Greene concedes that he has no such evidence to offer. Nor does he argue that the size of the disparity alone is sufficient to allow an inference of intent to discriminate. *See, e.g., Village of Arlington Heights,* 429 U.S. at 266, 266 n. 13, 97 S.Ct. at 563, 564 n. 13, and *Washington,* 426 U.S. at 241–42, 96 S.Ct. at 2048. In these circumstances, we are bound by the case law. We therefore affirm the trial court on its holding that Mr. Greene proved no violation of the constitutional guarantee of equal protection.

## II.

Both the fifth amendment guarantee of due process and the sixth amendment guarantee of an impartial jury trial require that grand jurors and the venire of petit jurors be chosen from a fair cross-section of the community. *See, e.g., United States v. Kleifgen,* 557 F.2d 1293, 1295–97 (9th Cir.1977) (fifth amendment), and *Taylor v. Louisiana,* 419 U.S. 522, 528, 530, 538, 95 S.Ct. 692, 696, 698, 702, 42 L.Ed.2d 690 (1975) (sixth amendment). In addition, by statute, it is "the policy of the United States that all litigants ... entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community." *See* 28 U.S.C. § 1861.

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is

due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). "[O]nce the defendant has made a prima facie showing of an infringement of his constitutional right to a jury drawn from a fair cross section of the community," the government "bears the burden of justifying this infringement by showing attainment of a fair cross section to be incompatible with a significant [governmental] interest." *Id.* at 368, 99 S.Ct. at 670. "[I]n Sixth Amendment fair-cross-section cases," moreover, "systematic disproportion itself demonstrates an infringement of the defendant's interest in a jury chosen from a fair community cross section." *Id.* at 368 n. 26, 99 S.Ct. at 670 n. 26. "The only remaining question," therefore, "is whether there is adequate justification for this infringement." *Id.*

This circuit has defined a distinctive group for sixth amendment fair cross-section purposes as a set of people who "have a shared attribute that defines or limits their membership [in the group], and [who] share a community of interest." *United States v. Black Bear*, 878 F.2d 213, 214 (8th Cir.1989). Using this test, the trial court in this case held that the mere fact that some persons had been charged but not convicted of felonies was not enough to require that those persons be considered a distinctive group for the purposes of fair cross-section analysis. In so holding, the trial court relied on *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), and stated that the Supreme Court had found that persons opposed to the death penalty were not a distinctive group for purposes of fair cross-section analysis. The trial court then concluded that the group of persons at issue in this case—those charged but not convicted of felonies—was "indistinguishable" from the group considered in *Lockhart* and therefore rejected Mr. Greene's fair cross-section argument as to persons charged but not convicted of felonies.

The trial court was not completely accurate in its description of the holding in *Lockhart*. In that case, the Supreme Court actually found not that persons opposed to the death penalty were not a distinctive group but that it was not a violation of the fair cross-section requirement to exclude persons opposed to the death penalty who had stated that they could not and would not consider imposing that penalty at the sentencing phrase of a criminal trial (the state petit jury in *Lockhart* decided both conviction/acquittal and the sentence if the defendant was convicted, *id.* at 166, 106 S.Ct. at 1761). *Id.* at 174, 176–77, 106 S.Ct. at 1765, 1767. The Supreme Court stated in conclusion that "any … group defined solely in terms of shared attitudes that render members of the group unable to serve as jurors … may be excluded from jury service without contravening any of the basic objectives of the fair-cross-section requirement." *Id.* at 176–77, 106 S.Ct. at 1767.

One of the purposes of the fair cross-section requirement is to preserve "public confidence in the fairness of the criminal justice system." *Taylor*, 419 U.S. at 530, 95 S.Ct. at 698; *see also Lockhart*, 476 U.S. at 174–75, 106 S.Ct. at 1765. There is a "significant [governmental] interest," *Duren*, 439 U.S. at 368, 99 S.Ct. at 671, however, in having jurors whose attitudes will not "prevent or substantially impair the performance of their duties as jurors," *Lockhart*, 476 U.S. at 165, 106 S.Ct. at 1760, *see also id.* at 167 n. 1, 174–75, 106 S.Ct. at 1762 n. 1, 1765. *Id.* at 180, 106 S.Ct. at 1768. Those duties are to "properly and impartially apply the law to the facts of the case." *Id.* at 175, 106 S.Ct. at 1765; *see also id.* at 180, 184, 106 S.Ct. at 1768, 1770. We believe that the trial court in Mr. Greene's case was actually trying to say, and we construe it as having said, that the inclusion, on grand juries and in the venires for criminal petit juries, of persons who have been charged but not convicted is "incompatible with [the] significant [governmental] interest," *Duren*, 439 U.S. at 368, 99 S.Ct. at 670, of having jurors who "can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case," *Lockhart*, 476 U.S. at 184, 106 S.Ct. at 1770. The exclusion of those persons, therefore, is not in violation of the fair cross-section requirement of the sixth amendment. *See id.* at 176–77, 106 S.Ct. at 1767.

This is, of course, the probity/unbiased-juror argument slightly restated and from a slightly different perspective. Since we accept the proposition that the exclusion is rationally related to the legitimate governmental purpose of assuring the unquestionable integrity of jurors and selecting jurors who are likely to be unbiased, it is only a small step to accepting the proposition that the significant governmental interest in having jurors who can be relied upon to perform their duties conscientiously, and in accordance with the law, is an "adequate justification," *Duren*, 439 U.S. at 368 n. 26, 99 S.Ct. at 671 n. 26, for the "infringement of the defendant's interest in a jury chosen from a fair community cross section," *id.* We therefore affirm the trial court on its holding that Mr. Greene proved no violation of the constitutional guarantee of juries chosen from a fair cross-section of the community.

## III.

■ At trial, Mr. Greene attempted to introduce evidence that he had rejected a plea agreement. The proposed agreement would have required him to plead guilty to one count of conspiracy involving more than 1,000 kilograms of marijuana. In return, he would have received use immunity for his cooperation with the government (the government would have been precluded from using his statements in any subsequent criminal prosecution against him for other crimes) and transactional immunity as to any nonviolent crimes uncovered as a result of his statements (the government would have been precluded from prosecuting him at all for those crimes). The agreement also included "an advantageous stipulated term of imprisonment" (we expect that this provision of the agreement must have been conditional on acceptance by the trial court).

Mr. Greene contended to the trial court that his rejection of this proposed plea agreement showed consciousness of innocence. The trial court excluded the evidence. On appeal, Mr. Greene argues that this exclusion was an abuse of discretion. *See, e.g., United States v. LeAmous,* 754 F.2d 795, 797 (8th Cir.1985), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985).

In declining to admit the evidence of Mr. Greene's rejection of a plea agreement, the trial court relied on *United States v. Verdoorn,* 528 F.2d 103 (8th Cir.1976). In that case, it was held that the trial court was correct in excluding evidence that the defendants wanted to introduce about the government's proposals during plea negotiations. *Id.* at 107. The appellate opinion alluded to "the rationale" of Fed.R.Evid. 408, "which relates to the general inadmissibility of compromises and offers to compromise," and held that "government proposals concerning pleas should be excludable." *United States v. Verdoorn,* 528 F.2d at 107.

Mr. Greene argues that his case is distinguishable from *United States v. Verdoorn* and is actually more similar to *United States v. Biaggi,* 909 F.2d 662 (2d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991). In that case, the appellate court held that a defendant should have been permitted to introduce evidence that he had rejected an offer of immunity. *Id.* at 690–91. The court in that case, however, noted that "the two types of negotiations [plea agreements versus immunity agreements] differ markedly in their probative effect when they are sought to be offered against the Government." *Id.* at 690. "Rejection of an offer to plead guilty to reduced [fewer, in our case] charges could also evidence an innocent state of mind, but the inference is not nearly so strong as rejection of an opportunity to preclude all exposure to a conviction and its consequences." *Id.* at 691. The court specifically stated that it "need not decide whether a defendant is entitled to have admitted a rejected plea bargain." *Id.*

We believe that *United States v. Verdoorn* has settled the matter in our circuit. We do not see a relevant distinction between plea agreements and immunity agreements except, perhaps, as to the weight that jurors might give to them. We note, too, that all the defendant is offering is a prior statement consistent with his plea of not guilty. Such statements, when offered by the defendant, are hearsay, except in narrow circumstances not present here. *See* Fed.R.Evid. 801(d)(1)(B). It is significant, too, that Mr.

Greene did not take the stand and therefore that any previous statements made by him were not subject to cross-examination. We cannot think that the privilege against self-incrimination extends so far as to allow a defendant's statements to be admitted without also allowing the government a chance to explore the facts surrounding them for motive and other relevant matter.

## IV.

■ Government agents searched Mr. Greene's house in October, 1991, but did not arrest him until April, 1992. By pretrial motion, Mr. Greene sought to suppress certain statements that he made to a DEA agent at the time of the initial search and after his arrest. Mr. Greene argued that those statements were made in the course of plea negotiations and were therefore excludable under Fed.R.Crim.P. 11(e)(6)(D) and Fed.R.Evid. 410(4). The trial court denied the motion to suppress and allowed the statements to be admitted into evidence. On appeal, Mr. Greene argues that the denial of the motion to suppress was clearly erroneous. *See, e.g., United States v. Jorgensen,* 871 F.2d 725, 728 (8th Cir.1989).

The rules themselves limit the excludable statements to those "made ... [to] an attorney for the government," *see* Fed.R.Crim.P. 11(e)(6)(D), or "made ... [to] an attorney for the prosecuting authority," *see* Fed.R.Evid. 410(4). This circuit has extended coverage under the rules, however, to statements made to a law enforcement agent who has express authority to act for the prosecuting government attorney. *See, e.g., United States v. Lawrence,* 952 F.2d 1034, 1037 (8th Cir.1992), *cert. denied,* — U.S. —, 112 S.Ct. 1777, 118 L.Ed.2d 434 (1992); *Rachlin v. United States,* 723 F.2d 1373, 1376–77 (8th Cir.1983); and *United States v. Grant,* 622 F.2d 308, 313, 314 n. 5, 315–16 (8th Cir.1980). The court has also suggested that a government agent's representation that he had the authority to negotiate a plea bargain might be sufficient to bring any consequent statements by a criminal defendant within the excludability provisions of the rules. *See, e.g., United States v. Lawrence,* 952 F.2d at 1037, and *Rachlin,* 723 F.2d at 1376.

The DEA agent who talked with Mr. Greene testified at a pretrial hearing on the motion to suppress. Mr. Greene did not testify. The DEA agent stated that it was his practice always to discuss with the prosecuting government attorney "the persons [whom] the government might like to see cooperate in the course of [an] investigation" and that the prosecuting government attorney knew of this practice. The DEA agent further stated that when he went to Mr. Greene's house in October, 1991, to execute a search warrant, he intended to "personally try to determine if Mr. Greene would want to cooperate or not" and that the prosecuting government attorney knew of this intention.

The DEA agent further said that when he actually talked with Mr. Greene, he told Mr. Greene that cooperation would be welcome but that he "could make no promises other than providing for [Mr. Greene's] cooperation and making that cooperation known to [the prosecuting government attorney] and the Court." The DEA agent specifically testified, however, that he himself did not "go up to the judge and tell him" of a witness's cooperation but that the court was customarily informed through the prosecuting government attorney. In other words, the DEA agent said, the notice to the court is "kind of built into the system."

The DEA agent then related that he had told the prosecuting government attorney that in response to his initial approach to Mr. Greene, "Mr. Greene had responded favorably to that idea." When pressed about whether the prosecuting government attorney had "agreed" that the DEA agent "should go forward, pursuing cooperation with Mr. Greene," the DEA agent described the prosecuting government attorney's remarks as " 'Well, that's good news. Keep up the good work.' " The DEA agent acknowledged that he considered these remarks to amount to "approval that [he] should continue forward with [his] efforts."

The DEA agent testified that he told Mr. Greene "that if [Mr. Greene's] attorney wanted some information, he could either call" the DEA agent or the prosecuting government attorney. The DEA agent stated, however,

that he "recommended" Mr. Greene's calling the prosecuting government attorney. The DEA agent flatly denied ever "meet[ing] with Mr. Greene's attorney to discuss further the possibility of cooperation and a plea." He testified that Mr. Greene's lawyer came by the DEA office "unexpected" just as the DEA agent and several others were leaving the office and that in order not to "be rude to the guy," the DEA agent "basically told him briefly the situation," in other words, "how much trouble I thought Mr. Greene was in."

Actual authority may be either express or implied. *See, e.g., Restatement (Second) of Agency* § 7 comment c at 29–30, § 8 comment a at 30 (1958). In either case, it refers to authority created by acts of a principal (here, the prosecuting government attorney) that would reasonably lead another (here, the DEA agent) to believe that the other was authorized to act for the principal. *See, e.g., Restatement (Second) of Agency* § 7 at 28, § 7 comment c at 29–30, § 26 at 100, § 26 comment a at 101, § 26 comment b at 101–02 (1958). On the record before it, the trial court found that there was no actual authority given by the prosecuting government attorney to the DEA agent to negotiate a plea agreement. We have read the transcript of the hearing on the motion to suppress, and we find that such a conclusion is not clearly erroneous.

Nor, having read the transcript, do we believe that the DEA agent had any apparent authority to negotiate a plea agreement, either on account of some conduct by the prosecuting government attorney in relation to Mr. Greene, *see, e.g., Restatement (Second) of Agency* § 8 at 30, § 8 comment a at 30–31, § 8 comment b at 31–32, § 27 at 103, § 27 comment a at 103–04, § 27 comment b at 104–05 (1958), or because the DEA agent represented himself as having the authority to negotiate a plea agreement, *see, e.g., United States v. Lawrence,* 952 F.2d at 1037, and *Rachlin,* 723 F.2d at 1376. We therefore affirm the trial court's denial of the motion to suppress.

## V.

■ The trial court conditionally admitted several alleged co-conspirator statements un-

der Fed.R.Evid. 801(d)(2)(E). At the close of the evidence, Mr. Greene moved for a mistrial, contending that 11 of the statements should not have been admitted and that a mistrial is the customary remedy under such circumstances. The trial court denied the motion for mistrial but struck the 11 statements in question and told the jury not to consider them.

On appeal, Mr. Greene argues that the trial court's refusal to declare a mistrial was an abuse of discretion, especially since there were various alleged defects in the government's proof and other alleged misconduct by the government during the trial. *See, e.g., United States v. Culver,* 929 F.2d 389, 391 (8th Cir.1991). The government responds, essentially, that the statements were not so seriously incriminating as to be unfairly prejudicial to Mr. Greene or to deprive him of a fair trial.

All of the cases indicate that the remedy for improper admission of alleged co-conspirator statements is a mistrial only if a cautionary instruction will not suffice to cure any prejudice. *See, e.g., United States v. Reda,* 765 F.2d 715, 721 (8th Cir.1985); *United States v. American Grain and Related Industries,* 763 F.2d 312, 319 (8th Cir.1985); *United States v. Offutt,* 736 F.2d 1199, 1200 (8th Cir.1984) *(per curiam);* and *United States v. Bell,* 573 F.2d 1040, 1044 (8th Cir. 1978). We have read the entire trial transcript, paying particular attention to the 11 statements at issue. Each is either cumulative to other evidence introduced or relatively innocuous in view of other evidence introduced. We see no abuse of discretion in the trial court's decision to give a cautionary instruction rather than to declare a mistrial.

## VI.

■ In one count of the indictment, Mr. Greene was charged with manufacturing marijuana. At trial and by post-trial motion, Mr. Greene argued that the government failed to prove that this offense took place in the district of indictment (the Southern District of Iowa), *see* Fed.R.Crim.P. 18, and therefore that he was entitled to a judgment of acquittal on that count. Referring to its

recollection of testimony by a DEA agent that Mr. Greene had admitted having marijuana fields in that district, the trial court ruled in a post-trial order that the evidence was sufficient to sustain the verdict that venue had been proved by a preponderance of the evidence. *See, e.g., United States v. Delgado,* 914 F.2d 1062, 1064 (8th Cir.1990). On appeal, Mr. Greene contends that there was no testimony specifically locating any marijuana fields in the district of indictment and that the only evidence introduced as to venue did not provide a sufficient basis for a finding that any of the fields were in the Southern District of Iowa.

We have read the trial transcript, which was not available at the time the trial court ruled on Mr. Greene's post-trial motion on the venue question. The only testimony on this question came from a DEA agent, who stated that Mr. Greene had "located seven of his marijuana fields" on a state map for the DEA agent by "point[ing] them out," at which time a second DEA agent "put a small pinhole" in the map in each of the places indicated. The DEA agent who testified did not, however, point out on the map the location of any of the pinholes designating marijuana fields, and the DEA agent who marked the map did not testify. Mr. Greene argues that the map (which was admitted into evidence) contains more than seven pinholes, that the holes are distributed both inside and outside the Southern District of Iowa, and therefore that only by speculating could a reasonable jury have found that any of the marijuana fields was in the district of indictment.

We have examined the map in question. Although there are what look like at least six pinholes in the Southern District of Iowa (in Keokuk, Mahaska, and Washington Counties), *see* 28 U.S.C. § 95(b)(5), § 95(b)(6), there are also what look like at least 13 pinholes in the Northern District of Iowa (in Benton, Black Hawk, Buchanan, Delaware, Iowa, Linn, and Tama Counties), *see* 28 U.S.C. § 95(a)(1), § 95(a)(2). Under the circumstances of this case, where there was no testimony as to which of the pinholes indicated marijuana fields, we agree with Mr. Greene that a conclusion that at least one of the seven marijuana fields was in the Southern District of Iowa could have been reached only by speculation. We therefore reverse Mr. Greene's conviction on the manufacturing count and remand the case to the trial court for the entry of a judgment of acquittal on that count. (We note that although all of the counts of conviction were grouped together for sentencing purposes, *see* U.S.S.G. § 3D1.1(a)(1), § 3D1.2(d), the conduct in the remaining counts of conviction involves "substantially the same harm," *see* U.S.S.G. § 3D1.2, either with or without the manufacturing count. We therefore conclude that the relevant guideline range is not affected by the elimination of that count.) Since, however, it is not impossible that the trial court might have sentenced Mr. Greene at a different point in the applicable range had it not considered the conviction that we now reverse, we remand for the purpose of resentencing. *See, e.g., Williams v. United States,* — U.S. —, —, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992).

## VII.

Under U.S.S.G. § 3B1.1(a), the trial court may increase the base offense level of a defendant for sentencing purposes if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The trial court in this case found at the sentencing hearing that Mr. Greene was an organizer of a criminal activity involving five or more participants; the trial court therefore enhanced Mr. Greene's base offense by four levels. On appeal, Mr. Greene argues that this finding is clearly erroneous. *See, e.g., United States v. Manuel,* 912 F.2d 204, 207 (8th Cir.1990).

Mr. Greene's argument is basically that the proof established only that he sold to multiple buyers, that there was no proof of an organization operated by him, and therefore that the enhancement was improper. *See, e.g., United States v. Rowley,* 975 F.2d 1357, 1364 n. 7 (8th Cir.1992), and *United States v. Streeter,* 907 F.2d 781, 792 (8th Cir.1990); *see also United States v. Belletiere,* 971 F.2d 961, 969–70 (3d Cir.1992); *United States v. Brown,* 944 F.2d 1377, 1381–

82 (7th Cir.1991); *United States v. Reid,* 911 F.2d 1456, 1465 (10th Cir.1990), *cert. denied,* 498 U.S. 1097, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991); and *United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990).

Evidence was introduced at trial that Mr. Greene distributed marijuana in large amounts (more than ten pounds at a time, hundreds of pounds over several years) directly or through an intermediary to Timothy Peters, Steven Shrock, Yudo Sines, and Dean Lintz. There was testimony at the sentencing hearing that the marijuana delivered to Mr. Shrock through Mr. Peters was broken up, at Mr. Peters's direction, into smaller packages by James Aryant and Laurie Neff.

In light of the evidence presented both at trial and at sentencing, we hold that it is not clearly erroneous to find that Mr. Greene was an organizer of a criminal activity that involved five or more participants or was otherwise extensive, *see* U.S.S.G. § 3B1.1(a). *See, e.g., United States v. Olesen,* 920 F.2d 538, 543 (8th Cir.1990), and *United States v. Johnson,* 906 F.2d 1285, 1291–92 (8th Cir. 1990); *see also United States v. Reid,* 911 F.2d at 1466. We therefore affirm the trial court's enhancement of Mr. Greene's sentence.

### VIII.

For the reasons stated, we affirm Mr. Greene's conviction on all counts except the one alleging the manufacture of marijuana. We reverse the trial court with respect to that count and remand the case for the entry of a judgment of acquittal on that charge and for resentencing.