UNITED STATES of America, Plaintiff,

v.

Gregory Lee MELINA, Defendant.

Crim. No. 3–94–135(2).

United States District Court,
D. Minnesota,
Third Division.

Sept. 6, 1994.

·D. Gerald Wilhelm, Asst. U.S. Atty., Minneapolis, MN, for plaintiff.

Scott F. Tilsen, Asst. Federal Defender, Minneapolis, MN, for defendant.

## ORDER

KYLE, District Judge.

Before the Court are Defendant's Objections to the Report and Recommendation of United States Magistrate Judge J. Earl Cudd and an appeal from a portion of Magistrate Judge Cudd's Order dated August 10, 1994 (Doc. No. 62). In the Report and Recommendation, Magistrate Judge Cudd recommends that the Court deny all of the defendants' motions to suppress evidence, statements, admissions, and answers, and deny defendant Melina's motions to dismiss the indictment for due process and Speedy Trial Act violations (Doc. No. 60). In his August 10, 1994 Order, Magistrate Judge Cudd denied Melina's motion for a protective order "with respect to the timing of the Rule 16 disclosures and the disclosures required by Rule 404(b)" (Doc. No. 59). The Court will address the objections to the Report and Recommendation first, and then take up the defendant's appeal on the issue of the protective order.

## OBJECTIONS TO THE REPORT AND RECOMMENDATION

Melina objects to two portions of the Report and Recommendation. First, Melina objects to the recommendation that the motion to suppress statements made on May 10, 1989 be denied. Second, Melina objects to the magistrate judge's recommendation to deny his motion to dismiss for pre-indictment delay. A district court must make an independent, de novo review of those portions of a Report and Recommendation to which objections have been made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b). The Court will consider each issue in turn.

### A. Suppression of May 10, 1989, Statements

█ Melina objects to Magistrate Judge Cudd's finding that the written statement Melina gave on May 10 was not made "in the course of plea negotiations" and therefore is admissible under Rules 410 of the Federal Rules of Evidence [1] and 11(e) of the Federal Rules of Criminal Procedure.[2] Melina also contends that the magistrate judge erred in concluding that those statements were made voluntarily.

The leading case in the Eighth Circuit on the admissibility of statements made "in the course of plea discussions with an attorney for the government" is *United States v. Grant*, 622 F.2d 308 (8th Cir.1980). In *Grant*, FBI agents told the defendant, who had voluntarily come to their offices, that the United States attorney would allow him to plead to a one-count indictment in exchange for his "cooperation." 622 F.2d at 310. At the evidentiary hearing, the FBI agent indicated that he had been authorized to make that proposal by the Assistant United States Attorney. *Id.* at 314. The Eighth Circuit held that statements made to law enforcement officials who have received express authority from the prosecuting attorney to make an offer to a defendant are statements made "in the course of plea discussions." *Id.* at 315.

The Court agrees with the magistrate judge's determination that *Grant* is not directly dispositive of the issue presented here. The Government does not challenge Officer Moran's authority to assure Melina that he would be charged with an offense less than first degree arson. Rather, the Government asserts that Officer Moran's representations on behalf of the county attorney do not constitute "plea discussions." Magistrate Judge Cudd concluded that Rules 410 and 11(e)(6) only apply in connection with a plea discussion or negotiation. The magistrate judge found that the defendant had neither offered to plead guilty nor was offered, or otherwise discussed, a plea of any sort. Accordingly, the magistrate judge reasoned that Melina's May 10 statement was admissible.

█ The issue before the Court, therefore, is whether the discussions between Melina and Officer Moran constitute "plea discussions." The general procedure for arriving at a plea agreement is set forth in Rule 11(e)(1) of the Federal Rules of Criminal Procedure:

> The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty ... to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:
>
> > (A) move for dismissal of other charges; or
> >
> > (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court;
> >
> > (C) agree that a specific sentence is the appropriate disposition of the case.

F.R.Crim.P. 11(e)(1) (emphasis added). Whether a defendant is engaged in plea discussions is a question of fact. *United States*

---

**1.** Rule 410 provides, in pertinent part:

Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

. . . .

(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

F.R.Evid. 410.

**2.** Rule 11(e)(6) states, in pertinent part:

Inadmissibility of Pleas, Plea Discussions, and Related Statements. Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

. . . .

(D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

*v. Leon Guerrero,* 847 F.2d 1363, 1367 (9th Cir.1988); *see Grant,* 622 F.2d at 312. A statement is made in the course of plea discussions if: (1) the suspect exhibits an actual subjective expectation that he is negotiating a plea at the time of the discussion; and (2) the suspect's expectation was reasonable given the totality of the circumstances. *Leon Guerrero,* 847 F.2d at 1367 (citations omitted); *United States v. Robertson,* 582 F.2d 1356 (5th Cir.1978) (en banc).

■ The Government contends that the conversation at issue here is properly categorized as a "bargained confession," as opposed to a plea discussion. The Government relies primarily on *United States v. Robertson* and its progeny. In *Robertson,* the court, en banc, set forth a framework for determining whether a discussion should be characterized as a "plea negotiation" and hence be rendered inadmissible. The Fifth Circuit noted that such a decision must be rendered on a case-by-case basis in light of the totality of the circumstances. 582 F.2d at 1366. The court set forth the two-part subjective-objective analysis referenced above. The majority also drew a critical distinction between pleas and confessions:

> A plea of guilty differs in purpose and effect from a mere admission or an extra judicial confession; it is itself a conviction. A confession only relates a set of facts and, therefore, requires only a knowledge of the factual situation. A guilty plea is something more; it is an admission of all the elements of the crime charged. While all guilty pleas are confessions, not all confessions are guilty pleas. Therefore it follows that not all confessions are plea negotiations.

*Id.* at 1368. The majority stressed that admissions of fact made voluntarily and with full awareness of the person's rights, either in the absence of plea negotiations or otherwise independently from any plea negotiations are still admissible. *Id.* In *Robertson,* the defendants admitted to their own roles in

the crime in order to exonerate their women companions. *Id.* at 1370. Stressing the fact that the defendants "did not offer to plead guilty" and "did not even contemplate pleading guilty," the Court held that their statements were not made in the course of a plea negotiation.[3]

In a concurring opinion, Judge Morgan expressed his discomfort at the majority's differentiation between "confession bargaining" and "plea bargaining." *Robertson,* 582 F.2d at 1371–73. Judge Morgan's reasoning is particularly apposite to the case at bar. In *Robertson,* as here, the "bargaining" between the defendant and law enforcement occurred prior to arraignment. The concurrence criticizes the majority's focus on whether the defendant actually pled or offered to plead; prior to arraignment, a defendant simply cannot make a guilty plea.

> [I]n many cases a so-called confession bargain will contemplate or assume a subsequent plea of guilty. I submit that, prior to arraignment, few things could more compellingly evidence a defendant's commitment not to contest his guilt than what was actually given here—a full confession.

*Id.* Thus, Judge Morgan defines the critical question as being "not whether Robertson pled guilty but whether such a plea was contemplated by the pre-arraignment negotiations." This Court finds Judge Morgan's reasoning persuasive and rejects the government's attempts to impose a rigid "confession/plea" dichotomy on the events at issue here.

■ Looking first at Melina's subjective expectations, the Court finds that Melina had expressed his concerns to Officer Moran about the "repercussions" of discussing the fires under investigation. He refused to respond to any questioning until he had received certain assurances from the county attorney concerning, among other things, the

**3.** Under Eighth Circuit precedent, the defendants statements in *Robertson* would not be considered part of "plea discussions" because they were made to law enforcement officers who did not represent that they had any authority from the government attorney to negotiate or make prom-

ises. Indeed, the Bureau of Alcohol, Tobacco and Firearms agents testified at the trial that they specifically told the defendants that they could only make the defendants' cooperation known to the authorities. 582 F.2d at 1361.

severity of the charge he would face.[4] Once Officer Moran told Melina that he would not be charged with first degree arson, he provided law enforcement officials with a written statement that plainly and unequivocally incriminated himself.[5] The Court finds that Melina had clearly negotiated for a reduced charge.[6] Although there is no direct evidence that Melina intended to plead guilty to such a charge, the Court infers that, by confessing to his role in the arson, he consciously chose to divest himself of any defense to the charges that would ultimately be brought in connection with his conduct.

> Only the rare and hopelessly optimistic defendant will fully confess while intending to plead not guilty.... [A]t the time a confession is given, which is the relevant time for characterizing the transaction, the parties are ordinarily contemplating that no trial contest of the question of guilt will ensue.

4. Melina apparently also sought assurances from the county attorney that his brother would be eligible for participation in a witness protection program. Tr. at 27.

5. The following are excerpts from the written statement Melina gave to Officer Moran on May 10:

> ....
> Q. Back in January of 1989, Edy's [sic] Restaurant in Long Lake had a fire. Do you have any information in regards to that fire?
> A. Yes.
> Q. In your own words, what do you know about this fire?
> A. Johnny Flaherty paid me and another guy to set it.
> ....
> Q. Prior to setting the fire in January, did John Flaherty, yourself and Westergaard ever get together so that Flaherty could show you the design and shape of the restaurant?
> A. Me, Kevin [Westergaard] and John never got together. He just told me and I told Kevin what was happening.
> ....
> Q. How did you get into the restaurant to start the fire?
> A. He [Flaherty] gave me a key to the side door.
> ....
> Q. Who went into the restaurant and actually started the fire?
> A. Me and Westergaard.

6. The Court distinguishes this case from *United States v. Taylor,* 792 F.2d 1019 (11th Cir.1986),

*Robertson,* 582 F.2d at 1371 (Morgan, J., concurring). The Court finds that Melina gave his self-incriminating statement to Officer Moran with the subjective expectation that he would ultimately plead guilty to a lesser charge, based on the contents of his statement.

■ Turning to the reasonableness of Melina's belief under the totality of the circumstances, the Court finds that there was an objective basis for Melina's belief that he was bargaining for a reduced charge. Officer Moran's conduct in the instant case goes beyond the typical situation in which a law enforcement official may encourage a defendant to cooperate by stating that they will "put in a good word" for the defendant, *United States v. Kummer,* 15 F.3d 1455, 1462 (8th Cir.1994), or otherwise make the prosecuting attorney aware that the defendant has cooperated.[7] *See, e.g., United States v. Greene,* 995 F.2d 793, 799 (8th Cir.1993); *United States v. Lawrence,* 952 F.2d 1034,

*cert. denied,* 481 U.S. 1030, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1987), which is relied upon by the government. In *Taylor,* the prosecuting attorney told one of the defendants that if he provided substantial assistance, pending state charges would be *dismissed* and his cooperation would be reported to a state judge who had just revoked his probation and sentenced him to fifteen years. 792 F.2d at 1022. It is clear from the foregoing that the acknowledgement of guilt—and the ultimate effect of rendering a trial contest on that issue moot—was not contemplated by the prosecutor and defendant in *Taylor.*

7. In this respect the case at bar is distinguishable from *United States v. Karr,* 742 F.2d 493 (9th Cir.1984). In *Karr,* the defendant was arrested after a grand jury had issued an indictment against him. Upon his arrest, agents of the Bureau of Alcohol, Tobacco and Firearms informed Karr of the indictment and asked him to help incriminate a third person. Karr agreed to cooperate. 742 F.2d at 495. The Ninth Circuit found that the statements Karr made to the ATF agents were not made in the course of "plea discussions" because Karr never inquired into the authority of the ATF agents to negotiate and never offered to plead guilty to any charge. Thus, "[a]ny subjective belief that [Karr] might have entertained regarding [the ATF agents'] authority to negotiate was unreasonable in the circumstances." *Id.* at 496. Unlike the discussion in *Karr,* Melina's belief in Officer Moran's authority to negotiate was based in affirmative representations made by the officer; hence, Melina's belief is objectively reasonable.

1037 (8th Cir.) *cert. denied,* —— U.S. ——, 112 S.Ct. 1777, 118 L.Ed.2d 434 (1992). The county attorney authorized Officer Moran to promise a charge of something less than first degree arson.[8] The Court concludes, in light of the totality of the circumstances, that the discussion between Melina and Moran was entered into "with a view toward reaching an agreement" that Melina would plead guilty to a lesser offense. Thus, Melina's written statement, which followed from Officer Moran's promise, must be considered part of the overall plea bargaining process.

Accordingly, the Court finds that the defendant here engaged in "plea discussions;" his written statement on May 10 was made in the course of such discussions and is therefore inadmissible. The Court will therefore reject that portion of the Report and Recommendation that found that Melina's statements were not made "in the course of plea discussions" and will grant the defendant's Motion to Suppress with regard to Melina's written statement made on May 10, 1989.[9]

### B. The Motion to Dismiss for Preindictment Delay

Melina has moved the Court for dismissal of the indictment for the prosecution's intentional or grossly negligent delay which has prejudiced his right to a fair trial. Melina did not brief this issue in the memorandum that he submitted in support of his objections. Upon a review of the files, records and proceedings herein, the Court determines that Magistrate Judge Cudd properly determined that the motion for preindictment delay based on the Fifth Amendment Due Process Clause should be denied.

### APPEAL FROM THE MAGISTRATE'S ORDER

Melina also appeals from the Magistrate Judge's denial of his motion for a protective order (Doc. No. 38). The court must modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A) and D.Minn.R. 72.1(b)(2).[10]

Based upon a review of the files and submissions herein, the Court concludes that Magistrate Judge Cudd's ruling denying Melina's motion for a protective order is neither clearly erroneous nor contrary to law.

### Conclusion

Based upon the files, records and proceedings herein, the Court

(1) **AFFIRMS** the Magistrate Judge's Order, dated August 10, 1994; and

(2) **MODIFIES** the Report and Recommendation of Magistrate Judge Cudd regarding the issue of whether the defendant had engaged in "plea discussions." Accordingly, **IT IS ORDERED** that

a. Defendant Melina's Motion to Suppress Statements, Admissions and Answers (Doc. No. 27) is **GRANTED** with respect to Melina's written statement on May 10, 1989;

b. all of the remaining motions by the defendants to suppress evidence, statements, admissions and answers are **DENIED;**

c. Defendant Melina's motions to dismiss the indictment (Doc. Nos. 36 and 37) are **DENIED.**

8. The magistrate judge found that Melina was charged with second degree assault and theft by swindle on or about January of 1989. Report and Recommendation at 30.

9. In light of its determination that the May 10 statement is inadmissible under Rules 410 and 11(e)(6), the Court does not address the defendant's objections to the magistrate judge's determination that the statement was made involuntarily.

10. Melina has not filed a memorandum in support of his appeal.