**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Vincent A. BARRY and Christopher
S. Barry, Defendants–Appellants.**

**Nos. 95–1561, 95–1591.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1995.

Decided Dec. 6, 1995.

Joseph R. Wall (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

James M. Shellow, Robert R. Henak, Dean A. Strang (argued), Shellow, Shellow & Glynn, Milwaukee, WI, for Defendant–Appellant.

Before BAUER, EASTERBROOK, and EVANS, Circuit Judges.

EVANS, Circuit Judge.

Today we consider the constitutionality of the exclusion from jury pools of persons charged with felonies. The exclusion has been attacked in other courts, but not often and never successfully. *See United States v. Greene,* 995 F.2d 793 (8th Cir.1993); *United States v. Foxworth,* 599 F.2d 1 (1st Cir.1979). This is the first time the issue has arrived at our door.

Specifically, in this appeal from their convictions for various drug-related offenses, Vincent A. Barry and Christopher S. Barry claim it was error for the district court to deny their challenge to 28 U.S.C. § 1865(b)(5) and the jury selection plan of the Eastern District of Wisconsin, which they contend are unconstitutional because they exclude from those eligible for service as jurors, persons with felony charges lodged against them. In addition, the defendants contend that they should have been allowed

limited disclosure of the instructions given to the grand jury which indicted them.

Federal law provides that each United States district court must have a plan for the random selection of grand jurors and petit jurors. 28 U.S.C. § 1863(a). The jury selection plan of the Eastern District of Wisconsin tracks the statutory instructions regarding the selection of jurors as set out in 28 U.S.C. § 1865. Under the statute, certain classes of people are ineligible for service. Section 1865(b)(5), at issue here, provides that

> the chief judge of the district court, or such other district court judge as the plan may provide, shall deem any person qualified to serve on grand and petit juries in the district court unless he
>
> . . . .
>
> (5) has a charge pending against him for the commission of . . . a crime punishable by imprisonment for more than one year. . . .

The nub of the Barrys' argument is that excluding people charged with a felony from a jury pool works to keep African–Americans out of the mix at a rate out of proportion to their numbers in the general population. The disparity claimed is on the order of eight- to thirteenfold. The alleged disparate racial effect is the basis for the claimed violation of the Equal Protection Clause of the Fifth Amendment to the Constitution. In addition, the Barrys contend that the exclusion of accused persons deprives a defendant of his right to a "fair cross-section" of the population in the array from which his jury is drawn and on the grand jury which indicts him, in violation of the Fifth and Sixth Amendments to the Constitution.[1]

■■■ The Due Process Clause of the Fifth Amendment includes a guarantee of equal protection parallel to that in the Fourteenth Amendment. *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). The selection of juries must comply with the Equal Protection Clause. *J.E.B. v. Alabama ex rel. T.B.,* — U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

---

**1.** The Barrys also contend that they should have been granted a hearing in the district court on their motion. Because the facts here are for the most part undisputed, we have little trouble concluding that it was not error for the district judge to decline to hold a hearing.

■ The Barrys first turn their attention to an argument that the equal protection issue requires the application not of the rational basis test, with its minimal level of scrutiny, but of an intermediate level of scrutiny, ordinarily reserved for classifications based on gender. They acknowledge that the classification is not subject to strict scrutiny, but because there is what they regard as a racial disparity under the law and the plan, they claim that both require more than a rational basis to survive.

In support of their argument, the Barrys say that the exclusion is an example of "structural racism" or "dysfunctional structure." The latter concept is explained in the Barrys' brief as follows:

[W]hen the system posits ideals of equal treatment under law and race-neutrality in operation, but one of its functions empirically works unequal treatment and pronounced racial disparity (regardless of the relative importance of that particular function among the system's many), that is dysfunction.

■ Although we are satisfied that an excursion into the esoteric rubric of the social scientist is not necessary in this case, we hasten to add, in plain English, that we are convinced, beyond question, of the importance of a fair selection process for jurors, both grand and petit. The system must not only be as fair as possible—it should also appear to be as fair as possible. A system which results in racial discrimination or a "pronounced racial disparity" is always, we would agree, dysfunctional, but *dysfunction* is not a legal term. As a legal matter, for the reasons we will note, we find that the disparity alleged here is not "pronounced."

The Barrys state that while blacks comprise only about 4.1%[2] of the adult population in Wisconsin, they made up 31% of all adult "index" arrests in 1990. Using the Barrys' population percentage figures, which are reasonably accurate, one in every twenty-five individuals in an average Wisconsin[3] jury pool should be an African–American. Now, if we assume there are 3 million adults in Wisconsin available for jury service (about 61% of the state's population), some 123,000 (4.1%) African–Americans should be subject to jury call. Next, we can assume, as the Barrys do, that 10,000 adult arrests for felonies occur in an average year. Using the 1990 arrest percentages supplied by the Barrys computes to 3,100 arrested African–Americans a year. In other words, 3,100[4] of the 123,000 blacks available for jury service in a given year are excluded from jury service by the prohibition challenged here. Is this a cause for concern? No, because looking at the bottom line available for jury service, which is what we think makes sense, 3.996%[5] of the pool would be black (123,000 less 3,100 = 119,900 divided by 3 million). As with the Barrys' original numbers, one in every twenty-five individuals subject to call for jury service would still be black.

This simple arithmetic exercise leads us to conclude that the "disparity" alleged by the Barrys does not support a heightened level of judicial scrutiny. In addition, the statute and the plan are race-neutral, and the Barrys make no attempt to show a purposeful intent to discriminate against African–Americans. We agree with the Eighth Circuit in *Greene,* which was also asked to apply an intermediate level of scrutiny to this issue:

Mr. Greene is fighting an uphill battle on this question, since it has been addressed many times by the courts. In relation to statutes that are facially race-neutral (as this one is), the Supreme Court

---

2. The 1990 census figures, of which we take note, list Wisconsin's population as 4,891,769. Of that number, 244,539 (4.99%) are listed as "black."

3. For simplicity sake, we use all of Wisconsin rather than break the statistics down to the state's two federal districts.

4. The number of persons excluded because they were charged, but not convicted, would in fact be fewer than this number at any given moment in time. Speedy trial requirements mandate that very few people remain in the status of accused felons for more than a few months. After that time they would either be convicted felons and excluded from jury service for that reason, or acquitted and therefore eligible once again for a jury call.

5. Actually, we have resisted the temptation to be overly persnickety with the percentages. The percentage is really a bit higher than 3.996 because to be entirely accurate the divisor in our example should not be 3 million. We would have to eliminate the charged nonblack potential jurors from the mix, a total of 6,900 people using the Barrys' figures, to be accurate. With a divisor of 2,993,100 rather than 3 million, the quotient in our division example becomes 4.006.

has repeatedly applied the rational relationship test unless some evidence of purposeful intent to discriminate has been shown.

*Greene* 995 F.2d at 796. The proper test under which to evaluate the equal protection claim is the rational relationship test. *See Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The issue is whether there is a rational relationship between the exclusion and a legitimate government interest. We find that there is.

■ The Barrys label as "banal" and "ambiguous" any justification for the exclusion based on juror probity. We, on the other hand, find juror probity to be the essence of the system. It refers to a juror's reliability at the outset to fill an important societal role. *United States v. Boney*, 977 F.2d 624 (D.C.Cir.1992). A person charged with a crime retains the presumption of innocence and may, of course, find himself among the tiny minority of defendants who escape conviction. But, given the high conviction rates—we know that almost 90% of those charged with felonies plead guilty and that about 80% of those who go to trial get convicted—the chances that an accused felon will slip through the net are indeed slim. The important point is, though, that simply being charged with a crime says something about a person, something which is material to his ability to serve as a juror. After being charged, and before conviction, there will already have been a finding—by a judge or a grand jury—of probable cause to believe that the person charged committed the crime. Based on that finding, it is rational to conclude that there is probable cause to believe that the person may not respect the law. It is rational to believe that such a person may not take seriously his obligation to follow the law as a juror is sworn to do.

The government argues also that possible juror bias justifies the exclusion. However, we think that there is no need to theorize about whether an accused felon is likely to be biased against the government or, on the other hand, whether he is likely to think, from some personal experience, that all persons charged will be likely to lie to avoid conviction and so be biased against the defendant. We cannot predict what he *might* do because he has been charged with a crime. The important point is that there will have been a finding of probable cause to believe that he has, *in fact*, disregarded the law. It is rational and not entirely theoretical to think he could do so again—in favor of one side or the other—if he were a juror. Accordingly, we cannot find that the classification violates the Equal Protection Clause.

■ The second attack on the statute and/or the jury selection plan is that the exclusion of accused felons violates the right to be tried by a fair cross-section of the population.

The Constitution requires that grand jurors and the venire of petit jurors be chosen from a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). We have said, in regard to the jury venire, that the jury must be chosen from a source that is representative of the community, but that the requirement is not to ensure representative juries, but impartial juries. *United States v. Ashley*, 54 F.3d 311, 313 (7th Cir.1995).

■ In order for a defendant to establish a prima facie violation of the fair cross-section requirement, he must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusions of the group in the jury selection process. Once a defendant has made a prima facie case, the government bears the burden of justifying the infringement by showing that the attainment of a fair cross-section is incompatible with a significant governmental interest. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

■ We look first to see whether persons accused of felonies constitute a "distinctive group," a somewhat amorphous term under the law. To help us define the term we look to the purposes of the fair cross-section requirement to establish the contours of the concept. Those purposes are ensuring that the common sense judgment of the community will act as a hedge against overzealous prosecutions; preserving public confidence in the criminal justice system; and furthering the notion that participation in the adminis-

tration of justice is a part of one's civic responsibility. *Silagy v. Peters*, 905 F.2d 986 (7th Cir.1990), *cert. denied*, 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991).

We are not convinced that alleged felons comprise a distinctive group. They have in common that they may have run afoul of the criminal justice system. However, there are many and varied ways to do that: dealing drugs, murder, extortion, rape, kidnapping, or tax evasion, embezzlement, and sometimes driving offenses. It is possible that an alleged tax evader may have something in common with a charged kidnapper, but the remote chance that he might, does not support a finding that the group is distinct.

Furthermore, looking to the purposes of the fair cross-section requirement, we note that in most cases, by running afoul of the law, accused persons have shown poor judgment, as the Barrys freely acknowledge. Theirs is hardly the common-sense judgment of the community. On the whole, their exclusion, more than their inclusion, would be likely to preserve public confidence in the criminal justice system. We also note that sometimes one person's view of fairness is another's view of injustice. Some people may approve of accused felons in a jury venire, others may not. For instance, in *United States v. Boney*, 977 F.2d 624 (D.C.Cir.1992), the defendants complained because they had a felon on their jury. An *accused* felon is different from a felon, but it is not a big leap to imagine someone challenging a conviction based on the fact that an accused felon was part of the group that decided his fate. The Barrys have failed to establish a prima facie case.

■ Even were the prima facie case made, we would find, as did the court in *Greene*, that the governmental interest in juror probity outweighs a defendant's interest in having a jury which could include someone accused of a felony.

■ Finally, defendants claim that it was error not to disclose to them the instructions given to the grand jury as to the various offenses of which they were charged. They contend that instructions to the grand jury are ministerial in nature and are not "matters occurring before the grand jury," to obtain which a defendant must show particularized need. Rule 6, Federal Rules of Criminal Procedure. The claim cannot be sustained.

■ Particularized or not, the defendants have not shown any need for the instructions. Furthermore, a grand jury usually sits for a long time, and it is not reinstructed every time evidence is taken. Here, there may not have even been any new instructions given when the Barrys were indicted. For these reasons, district judges have considerable discretion in releasing and in refusing to release grand jury matters. *United States v. Lisinski*, 728 F.2d 887 (7th Cir.), *cert. denied*, 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984). We will not disturb the decision that Judge Curran made in this case. For these reasons, the judgments below are AF-FIRMED.