**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 03-4909**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KEVIN IVAN ANTHONY, a/k/a Van,

Defendant - Appellant.

———————

**No. 03-4945**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CARLOS DEAN SCOTT, a/k/a Binky, a/k/a Bink,

Defendant - Appellant.

———————

Appeals from the United States District Court for the Southern District of West Virginia, at Bluefield.  David A. Faber, Chief District Judge.  (CR-02-241)

———————

Submitted:  May 13, 2005          Decided:  July 12, 2005

———————

Before NIEMEYER, MICHAEL, and SHEDD, Circuit Judges.

———————

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

Dennis H. Curry, Spencer, West Virginia; Troy N. Giatras, Mark L. French, GIATRAS & WEBB, Charleston, West Virginia, for Appellants. Kasey Warner, United States Attorney, John L. File, Assistant United States Attorney, Beckley, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Kevin Ivan Anthony (Appeal No. 03-4909) and Carlos Dean Scott (Appeal No. 03-4945) appeal from their judgments of conviction and sentences, based on jury verdicts, finding them guilty of one count each of conspiracy to distribute fifty grams or more of cocaine base and a quantity of hydromorphone and distribution of five grams or more of cocaine base, and aiding and abetting same, in violation of 21 U.S.C. §§ 846, 841(a)(1) (2000) and 18 U.S.C. § 2 (2000), respectively (Anthony); and one count of conspiracy to distribute fifty grams or more of cocaine base and a quantity of hydromorphone, and three counts of distribution of five grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) (2000) and 18 U.S.C. § 2 (2000), respectively (Scott). Anthony and Scott appeal their convictions, alleging that the district court: (1) clearly erred in finding that the jury selection process in the Southern District of West Virginia did not render Appellants' trial unconstitutional, despite the fact that neither the jury venire nor the jury panel contained African-Americans; (2) erred in failing to order a sua sponte mistrial or other corrective action based upon an ex parte communication between the Assistant United States Attorney and a witness's supervising probation officer during trial; and (3) abused its discretion in denying Anthony's proposed jury instruction on aiding and abetting. They also allege plain error relative to their

- 3 -

sentences under United States v. Booker, 125 S. Ct. 738 (2005), because the district court calculated drug weights for relevant conduct purposes used to determine their base offense levels, and applied a two-level enhancement to their base offense levels pursuant to U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (2003). Anthony also challenges the district court's failure to consider Anthony's request to be considered as a minor role participant pursuant to USSG § 3B1.2. In accordance with our discussion below, we affirm Anthony's and Scott's convictions, but vacate their sentences and remand to the district court for resentencing.

## I. Conviction Issues

The first challenge Appellants advance relative to their convictions is that the jury venire was unconstitutional because it systematically excluded African-Americans and other minorities from jury service.[1] When there were no minorities on the forty-seven person venire, Appellants made a timely objection and evidence was taken from Sam Kay, the Clerk of Courts for the Southern District of West Virginia and Cassandra Staples, Deputy Clerk in Charge of the Beckley Division of the Southern District of West Virginia during an in camera hearing on the issue.

Kay testified that the jury selection plan used in this case was that used for all jury trials in the Southern District of West Virginia. The Clerk's office obtains names of prospective

---

[1]Both Anthony and Scott are African-American.

- 4 -

jurors from the voter registration list and the list of drivers holding a valid West Virginia driver's license. The driver's license list was added in 1997 as a "direct effort" to include more African-Americans. Kay testified that the persons selected as potential jurors are chosen at random without reference to their race. He further testified that approximately 2.2 percent of the qualified jurors in the division are African-American, and approximately 3.2 percent of the state population is African-American. Staples testified that the venire called for this trial came from a group of 188, of which one was African-American, and that the jurors chosen for the venire were chosen at random without regard to race.[2] The district court determined that Appellants failed to establish the third prong of the test set forth in Duren v. Missouri, 439 U.S. 357 (1979), i.e. they did not establish that the under-representation of minorities, and of African-Americans in particular, was due to a "systematic exclusion of the group in the jury-selection process." Duren, 439 U.S. at 364.

Appellants assert, for the first time on appeal, that the jury selection process systematically excludes African-Americans because it excludes from service felons and all single parents whose children are under the age of ten. To the extent these

[2]The district judge took judicial notice that, to the best of its recollection, this was the first pool of its size that did not contain any African-American individuals in the Beckley or Bluefield divisions of the district during the eleven years the judge had served.

arguments are not waived because they were not specifically asserted first in the district court, see Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993), we find that they have no merit.

This court previously has approved the use of a voter registration list as a vehicle to select jurors. United States v. Lewis, 10 F.3d 1086 (4th Cir. 1993); United States v. Cecil, 836 F.2d 1431 (4th Cir. 1988). While we have not addressed the use of the driver's list, it has been approved by at least one of our sister circuits. See Ramseur v. Beyer, 983 F.2d 1215 (3d Cir. 1992). Moreover, the purpose of including the driver's license list in this district was a direct attempt to increase the number of African-Americans in the jury venire.

In addition, the constitutionality on various grounds of the exclusion of felons from jury service pursuant to 28 U.S.C. § 1865(b)(5), has been upheld by those courts in which the issue has been considered. See, e.g., United States v. Barry, 71 F.3d 1269, 1273-74 (7th Cir. 1995); United States v. Arce, 997 F.2d 1123, 1127 (5th Cir. 1993); United States v. Greene, 995 F.2d 793, 796 (8th Cir. 1993); United States v. Foxworth, 599 F.2d 1, 4 (1st Cir. 1979); United States v. Test, 550 F.2d 577, 594 (10th Cir. 1976) (en banc).

Finally, the jury plan at issue states that single parents with children under the age of ten "whose health and/or safety would be jeopardized by [the individual's] absence for jury

service" may be excused upon the individual's request. This provision is not an outright exclusion, and does not establish an inherent or systematic exclusion of African-Americans pursuant to Duren. See, e.g., United States v. Eskew, 460 F.2d 1028 (9th Cir. 1972) (upholding similar provision). Accordingly, we agree with the district court's determination that the jury venire in Appellants' case was not unconstitutional.

Appellants also assert prejudice based on a communication between the Assistant United States Attorney and the United States Probation Officer who supervised government witness O.T. Scott. Specifically, on cross-examination, Scott's drug use while under the supervision of the probation office became a subject of inquiry by the defense. The Assistant United States Attorney asked the probation officer whether Scott had tested positive for drug use while on bond awaiting sentencing, and the probation officer responded that Scott had been subjected to urinalysis while under supervision and that he had had no positive tests except for prescription medication. There is no indication in the record, nor do Appellants assert, that the jury was aware of the communication.

Appellants assert that the information regarding Scott's drug use while on bond was Brady[3] or Giglio[4] material, which should have been produced to Appellants prior to trial. They further

---

[3] Brady v. Maryland, 373 U.S. 83, 87 (1963).

[4] Giglio v. United States, 405 U.S. 150 (1972).

assert that the actions of the Assistant United States Attorney in asking the question of the probation officer, and the probation officer's action in responding to the question, demonstrate collusion between the two agencies and an agreement that the probation officer would assist the government in convicting Appellants. They seek a new trial.

We find Appellants' claim to be without merit. First, because Appellants failed to ask for a mistrial in the district court, we review for plain error their present claim that the district court should have granted a sua sponte mistrial on the basis of the contact between the government and the probation officer. See United States v. Olano, 507 U.S. 725, 731-32 (1993). We find no prejudice shown on this record such as would seriously affect the fairness, integrity, or reputation of the judicial proceedings. Id. There has been no demonstration whatsoever by Appellants that the communication affected their rights at all, particularly given that the jury was unaware of the communication. The defense itself raised the subject issue on cross-examination, thus opening the door for the redirect examination by the Assistant United States Attorney. In addition, the documentation relating to the witness's drug testing properly was withheld from disclosure by the district court because it did not contain exculpatory information or information otherwise beneficial to the defense, and therefore its production was not required under Brady or Giglio.

Hence, there was no error by the district court relative to the subject communication.

The final conviction-related issue raised on appeal is Anthony's assertion that the district court erred in excluding his proposed jury instruction regarding his affirmative duty to act when in the presence of illegal activity. Anthony sought a "clear statement" by the district court to the effect that his mere presence as a driver cannot be enough to convict him as an aider and abettor.

While the district court initially refused the instruction as being contrary to law, it later held that the standard aiding and abetting instruction adequately covered the issue. We find that the instruction given by the district court accurately stated the law on aiding and abetting. See United States v. Burgos, 94 F.3d 849, 873 (4th Cir. 1996) (en banc). In addition, the instruction given included the "clear statement" Anthony sought that the government had to prove that he had an active role in the distribution to be convicted as an aider and abettor, and that being a mere bystander was insufficient to establish criminal culpability. Anthony cannot show prejudice because the instruction given reflects the requisite intent necessary for a conviction. Hence, we find no abuse of discretion in the district court's refusal of Anthony's proffered jury

instruction.  See United States v. Ruhe, 191 F.3d 376, 385 (4th Cir. 1999).

## II. Sentencing Issues

Anthony and Scott claim error with regard to the district court's calculation of drug weights attributable to them in calculating their base offense levels, in the two-point enhancement applied by the district court pursuant to USSG § 2D1.1(b)(1), and to their respective sentences for possession of a firearm.  Anthony also asserts error by the district court in failing to consider him a minor role participant and thus refusing to decrease his offense level pursuant to USSG § 3B1.2.  Both Anthony and Scott have raised the constitutionality of their sentences based on Booker and United States v. Hughes, 401 F.3d 540 (4th Cir. 2005), asserting plain error by the district court in determining their sentences based on judicially-determined facts found by a preponderance of the evidence and under a mandatory guidelines sentencing scheme.  The Government has responded, stating that it does not oppose resentencing in these cases because the district court's mandatory application of the guidelines is error in light of the subsequently decided legal authority.

Here, the district court sentenced Anthony and Scott on October 29, 2003, under the mandatory guidelines scheme in place prior to the Supreme Court's decision in Booker, and prior to this

Court's decision in <u>Hughes</u>.[5]  The drug conspiracy statute under which both Anthony and Scott were convicted, 21 U.S.C. § 846, carries a prescribed sentence of ten years to life.  21 U.S.C. § 841(b)(1)(A)(IV)(iii).  The drug distribution statute under which they were both convicted, 21 U.S.C. § 841(a)(1), carries a prescribed sentence of five to forty years.  21 U.S.C. § 841(b)(1)(B)(IV)(iii).  In preparing the presentence reports, the probation officer concluded that a base offense level of thirty-eight was proper both for Anthony and for Scott, based on a quantity of twenty pounds of cocaine base, pursuant to USSG §§ 2D1.1(a)(3), 2D1.1(c).[6]  The probation officer's determination of the amount of cocaine base was based on the offenses of conviction, extensive grand jury testimony, debriefings and codefendant interviews, trial evidence and testimony, and the representations of Alfred Rucker.  In addition, the probation officer added a two-point enhancement to the base offense level of both Anthony and Scott, pursuant to USSG § 2D1.1(b)(1), for

---

[5]Just as we noted in <u>Hughes</u>, "[w]e of course offer no criticism of the district judge, who followed the law and procedure in effect at the time" of Anthony's and Scott's resentencing.  401 F.3d at 545 n.4; <u>see generally</u> <u>Johnson v. United States</u>, 520 U.S. 461, 468 (1997) (stating that an error is "plain" if "the law at the time of trial was settled and clearly contrary to the law at the time of appeal").

[6]The amount of cocaine base, converted into kilograms for purposes of the guidelines calculation, yielded 9.072 kilograms, and a base offense level for an offense involving 1.5 kilograms or more of cocaine base.

possession of a firearm.  Finally, the probation officer applied a further two-point enhancement to Scott's sentence, pursuant to USSG § 3B1.1(c), for being a leader and organizer of the conspiracy. Anthony's total offense level was forty, and Scott's was forty-two.

The probation officer then assigned a criminal history category to Anthony of II, and a criminal history category to Scott of VI,[7] based on his career offender status pursuant to USSG § 4B1.1.  The resultant guideline range for Anthony was set at 324 to 405 months.  The resultant guideline range for Scott was set at 360 months to life.

Based solely on the indictment, i.e. facts found by the jury, the drug amounts would yield a base offense level of thirty-two for both Anthony and for Scott, with a resultant unenhanced guideline range of 135-168 for Anthony and 188-255 for Scott. Thus, the higher offense level resulted in a substantial increase in the guideline ranges for both Anthony and Scott.

Ultimately, the district court sentenced  Anthony to 324 months' imprisonment on each count (the low end of the assigned guideline range), to run concurrently, a five year term of supervised release, and ordered payment of a $5000 fine and a $200 special assessment.  The district court sentenced Scott to 360 months' imprisonment on each count (the low end of the assigned

---

[7]The district court adjusted Scott's criminal history category at trial to V, but the adjustment did not change the applicable guideline range.

guideline range), to run concurrently, a five year term of supervised release, and ordered payment of a $5000 fine and a $400 special assessment. Hence, the district court's findings at sentencing relative to the base offense level and the enhancements, determined by a preponderance of the evidence, resulted in a substantially increased sentence for both Anthony and Scott.

In Booker, the Supreme Court applied the decision in Blakely v. Washington, 124 S. Ct. 2531 (2004), to the federal sentencing guidelines and concluded that the Sixth Amendment is violated when a district court imposes a sentence under the Sentencing Guidelines that is greater than a sentence based solely upon facts found by the jury. Booker, 125 S. Ct. at 752-56. The Court remedied the constitutional violation by severing two statutory provisions, 18 U.S.C. § 3553(b)(1) (West Supp. 2004) (requiring sentencing court to impose a sentence within the applicable guideline range), and 18 U.S.C.A. § 3742(e) (West 2000 & Supp. 2004) (setting forth appellate standards of review for guideline issues), thereby making the guidelines advisory. Hughes, 401 F.3d at 546 (citing Booker, 125 S. Ct. at 757 (Breyer, J., opinion of the Court)).

After Booker, courts must calculate the appropriate guideline range, consider the range in conjunction with other relevant factors under the guidelines and 18 U.S.C.A. § 3553(a), and impose a sentence. If a court imposes a sentence outside the

guideline range, the district court must state its reasons for doing so.  <u>Hughes</u>, 401 F.3d at 546.  This remedial scheme applies to any sentence imposed under the mandatory sentencing guidelines, regardless of whether or not the sentence violates the Sixth Amendment.  <u>Id.</u> at 547 (citing <u>Booker</u>, 125 S. Ct. at 769 (Breyer, J., opinion of the Court)).

In this case, as in <u>Hughes</u>, the district court sentenced Anthony and Scott by applying the guidelines as a mandatory determinant in sentencing and based upon facts not authorized by the jury's findings.  In light of the change in the law, we conclude that the district court erred in determining Appellants' sentences, that the error was plain and affected Appellants' substantial rights, and that we should exercise our discretion to notice the error.  We therefore vacate Anthony's and Scott's sentences and remand for resentencing.[8] [9]

---

[8]Although the Sentencing Guidelines are no longer mandatory, <u>Booker</u> makes clear that a sentencing court must still "consult [the] Guidelines and take them into account when sentencing." 125 S. Ct. at 767.  On remand, the district court should first determine the appropriate sentencing range under the Guidelines, making all factual findings appropriate for that determination. <u>Hughes</u>, 401 F.3d at 546.  The court should consider this sentencing range along with the other factors described in 18 U.S.C. § 3553(a), and then impose a sentence. <u>Id.</u>  If that sentence falls outside the Guidelines range, the court should explain its reasons for the departure as required by 18 U.S.C. § 3553(c)(2). <u>Id.</u>  The sentence must be "within the statutorily prescribed range and . . . reasonable." <u>Id.</u> at 547.

[9]We decline to address the propriety of the district court's refusal to apply USSG § 3B1.2 to Anthony's sentence, in light of the disposition of this appeal. <u>Id.</u> at 556 n.15.

Accordingly, although we affirm Anthony's and Scott's convictions, we vacate their sentences and remand to the district court for resentencing in accordance with <u>Booker</u> and <u>Hughes</u>. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART</u>,
<u>VACATED IN PART</u>,
<u>AND REMANDED</u>