# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 19, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP605-CR**

Cir. Ct. No. 2020CF413

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

DONALD LEE BILLINGS,

    DEFENDANT-APPELLANT.

---

APPEAL from judgment and an order of the circuit court for Winnebago County: DANIEL J. BISSETT, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Donald Lee Billings appeals a judgment convicting him of first-degree intentional homicide and unlawfully possessing a firearm as a previously convicted felon.   He also appeals an order denying his motion for postconviction relief.   He argues:  (1) that he was denied the right to a trial by a fair and impartial jury; and (2) that there was insufficient evidence presented at trial to support his conviction for first-degree intentional homicide.   We affirm.

¶2     Billings was charged with first-degree intentional homicide and unlawfully possessing a firearm as a felon in the death of Adam Baith.   A jury convicted him of both counts.   Billings moved for postconviction relief, arguing a violation of his constitutional right to a jury drawn from a fair cross section of the community.   In lieu of an evidentiary hearing, the State and the defense stipulated to facts that served as the basis for the claim.   The circuit court denied the motion. This appeal follows.

¶3     Billings first argues that his right to a jury drawn from a fair cross section of the community was violated because the jury venire significantly underrepresented Black Americans.   According to the stipulated facts, jury venires in Winnebago County in 2021, as well as the jury panel called for this case, were drawn from a random list of people provided by the Department of Motor Vehicles (DMV).   In addition, Black Americans constituted 2.5% of the population in Winnebago County per the United States Census Bureau, but Black Americans constituted only .81% of the jury venire panels in Winnebago County.   Billings claims that this underrepresentation is due to systematic exclusion stemming from the jury selection process.

¶4     The Sixth Amendment and Fourteenth Amendment guarantee a defendant the right to a "jury selected from a fair cross section of the community."

*Duren v. Missouri*, 439 U.S. 357, 358-59 (1979). To show a prima facie violation of the fair cross section requirement, a defendant must establish:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 364. Whether Billings has made a prima facie case under *Duren* is a question of law that we review independently. *See State v. Arrington*, 2022 WI 53, ¶33, 402 Wis. 2d 675, 976 N.W.2d 453.

¶5      We focus on the third prong of the *Duren* test. Billings argues that the jury selection process in Winnebago County systematically underrepresents Black Americans because Winnebago County uses records from the Department of Motor Vehicles (DMV) to draw its jury pool, and those records disproportionately exclude minorities, who are less likely to have driver's licenses. He also contends that Wisconsin statutes excluding felons from jury service disproportionately limit the number of Black Americans in the jury pool, citing statistical evidence on racial disparities in incarceration rates.

¶6      Even if we assume, for the sake of argument, that Billings has carried his burden of showing that Black Americans are underrepresented in the jury venires of Winnebago County, Billings has not carried his burden of showing that the underrepresentation is the result of systematic exclusion of Black Americans. Although Wisconsin courts have apparently not addressed when underrepresentation of a distinct group is systematic under *Duren*, we believe the reasoning of the California Supreme Court is persuasive: "[a] defendant does not discharge the burden of demonstrating that the underrepresentation was due to

3

systematic exclusion merely by offering statistical evidence of a disparity. A defendant must show, in addition, that the disparity is the result of an improper feature of the jury selection process." *People v. Henriquez*, 406 P.3d 748, 763 (Cal. 2017) (alteration in original; citation omitted). The *Henriquez* court further explained that "[w]here … a county's jury selection criteria are neutral with respect to the distinctive group, the defendant must identify some aspect of the manner in which those criteria are applied that is not only the probable cause of the disparity but also constitutionally impermissible." *Id.*

¶7    Billings has not shown that the disparity here is the result of some constitutionally impermissible feature of Winnebago County's jury selection process. Billings contends that randomly drawing potential jurors from DMV records disproportionately excludes minorities, but he has not shown that any other available governmental list or method of procuring potential jurors would have produced a jury venire that is more representative of the population. Without evidence showing that an alternative source of potential jurors would expand the diversity of the jury pool, and thus include more Black Americans, Billings' argument lacks a proper evidentiary underpinning.

¶8    Moreover, Billings provides no legal authority to support his argument that Wisconsin's felon exclusion law results in constitutionally impermissible jury pools. This is an argument that has been routinely rejected by courts. *See*, *e.g.*, *United States v. Barry*, 71 F.3d 1269, 1273-74 (7th Cir. 1995); *United States v. Foxworth*, 599 F.2d 1, 4 (1st Cir. 1979). In sum, without evidence regarding the effect of using other sources to create jury venires or legal authority to support his felon exclusion law argument, Billings has not established that he meets the third prong of the *Duren* test—that the underrepresentation was due to systemic exclusion.

¶9      Billings next argues that his conviction was not supported by sufficient evidence. "[A]n appellate court may not reverse a conviction unless the evidence, viewed most favorably to the [S]tate and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). The standard for reviewing a conviction based on circumstantial evidence is the same as the standard for reviewing a conviction based on direct evidence. *Id.* "[T]he trier of fact is the sole arbiter of the credibility of the witnesses and alone is charged with the duty of weighing the evidence." *State v. Below*, 2011 WI App 64, ¶4, 333 Wis. 2d 690, 799 N.W.2d 95. "When more than one inference can reasonably be drawn from the evidence, the inference which supports the trier of fact's verdict must be the one followed on review unless the evidence is incredible as a matter of law." *Id.*

¶10      The jury viewed a surveillance video showing Billings and Baith talking at a bar and leaving together. Billings' friend, Cristafer Berdell, testified that he was with Dominica Propst and Billings at the bar. When the bar closed, they left to follow Baith to his home with the intention of continuing to drink. Berdell further testified that upon arrival at Baith's home, he and Propst stayed in the car talking and smoking while Billings and Baith went inside. Berdell heard gunshots seven or eight minutes later and called 911, fearing that Billings had been shot.

¶11      Propst testified that she left the bar with Berdell and Billings. She saw Billings and Baith enter Baith's home and heard gunshots a while later.

¶12      One of the responding police officers testified that he saw a man leave through the back door of Baith's house but lost sight of him. Upon entering the home, the police found Baith dead. Billings' DNA and his palm prints were found

inside. The medical examiner testified that Baith died from multiple gunshot wounds, with evidence suggesting close-range firing. Baith's wallet and Billings' cell phone were found on nearby property, suggesting a possible attempt to dispose of evidence.

¶13 Shortly after Baith's murder, surveillance footage captured Billings arriving at his girlfriend's home nearby and then leaving shortly thereafter. Billings' girlfriend testified that Billings arrived at her house at around 4:30 a.m., was acting suspiciously and demanded that she immediately drive him to Milwaukee.

¶14 The evidence presented at trial, briefly summarized above, which included witness testimony, physical evidence, and forensic analysis provided a robust basis for the jury to conclude beyond a reasonable doubt that Billings was responsible for the death of Baith. We reject the argument that there was insufficient evidence for the jury to conclude that Billings was guilty beyond a reasonable doubt of first-degree intentional homicide.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).