COURT OF APPEALS
DECISION
DATED AND FILED

April 30, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1518-CR**

Cir. Ct. No. 2019CF1674

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

AMANI SWANEL TOBIAS SMITH,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: BRAD SCHIMEL, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Amani Swanel Tobias Smith appeals from a judgment of conviction, entered upon a jury's verdict, of four felonies related to the death of Dennis Huelse. He also appeals from a circuit court order denying his motion for postconviction relief. Smith argues that his constitutional right to a jury panel that represents a fair cross-section of the community was violated, and further, that the court erred in denying a motion for his trial counsel to withdraw. We disagree and affirm.

## BACKGROUND

¶2    Smith was charged with first-degree intentional homicide while using a dangerous weapon, arson of a building without the owner's consent, mutilation of a corpse, and taking and driving a vehicle without the owner's consent. The evidence presented at trial established that Smith stabbed Huelse in the throat—killing him, then set Huelse's house on fire and stole his red Pontiac Firebird. A jury convicted Smith of all four counts. Smith moved for postconviction relief, arguing a violation of his constitutional right to a jury drawn from a fair cross-section of the community and that the circuit court erroneously exercised its discretion in denying Smith's eleventh-hour request to allow his trial counsels' withdrawal from representation. Following two days of evidentiary hearings, the circuit court denied the motion. This appeal follows.

## DISCUSSION

*Fair Cross-Section Requirement*

¶3    On appeal, Smith first argues that he is entitled to a new trial because the representation of Black Americans in both the jury array and the resulting jury panel did not represent a fair cross-section of the community. To

2

address this issue, we must decide whether the jury array, from which Smith's 2021 Waukesha County jury panel and, ultimately the jury was chosen, was a fair and reasonable representation of the percentage of Black Americans in the population of Waukesha County.

¶4      A criminal defendant has a right, under the Sixth and Fourteenth Amendments, to a jury that has been "selected from a fair cross section of the community." *Duren v. Missouri*, 439 U.S. 357, 359 (1979). We independently review challenges to constitutional principles. *State v. Pinno*, 2014 WI 74, ¶36, 356 Wis. 2d 106, 850 N.W.2d 207.

¶5      To establish a prima facie violation of the fair cross-section requirement, a defendant must demonstrate:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren*, 439 U.S. at 364. The State concedes, and we agree, that Black Americans are a distinctive group under the *Duren* test. Therefore, the first prong is satisfied.

¶6      As to the second prong, a fair cross-section is present if "[s]ubstantial representation of a distinctive group exists." *State v. Pruitt*, 95 Wis. 2d 69, 78, 289 N.W.2d 343 (Ct. App. 1980). However, a jury pool "need not be a statistical mirror of the community," and "[a]bsolute proportional representation is not required." *Id.* There is no "de minimus disparity [that] amounts to an unfair or unreasonable representation of any 'distinctive group.'" *United States v. McAnderson*, 914 F.2d 934, 941 (7th Cir. 1990). In fact,

"discrepancies of less than ten percent, standing alone, cannot support a claim of underrepresentation." *Id.*

¶7      With respect to the second prong, Smith argues that "[t]here is a significant disparity in the representation of Black citizens in Waukesha County and those in the jury array."   In *Pruitt*, cited above, the distinctive group's representation in the array of potential jurors was roughly half of its representation in the general population, 12.7 percent and 25 percent, respectively, which we held was "fair and reasonable."   *Id.*, 95 Wis. 2d at 78.   Here, based on the evidence, including testimony of the Waukesha County jury coordinator, the court found that in 2021, the year this jury was selected, the percentage of Black Americans eligible for jury service in the Waukesha County population was 1.62 percent,[1] the percentage of Black Americans on the jury array was 1.57, and the percentage on the jury panel selected from the master list was 1.6 percent.   Thus, the absolute disparity between the population of Black Americans in Waukesha County and the percentage in the population is less than one percent.[2]   This representation of the distinctive group in the Waukesha County jury arrays was far greater than that in *Pruitt*.   Accepting the circuit court's findings, we conclude that Black Americans were substantially represented in this jury array.

---

[1] Smith claims that "the statistics provided by the Census bureau" show that the percentage of Black Americans in Waukesha County in 2021 was not 1.62 percent, but rather was 2 percent.   We reject Smith's argument that the circuit court's findings of fact as to this point were clearly erroneous.   Whether the population of Black Americans in Waukesha County in 2021 was 1.62 percent or 2 percent does not in any way affect that the disparity was well less than 10 percent.   We do not discuss this issue further.

[2] The "absolute disparity" rate is calculated by taking the percentage of a particular minority in the jury pool and subtracting it from the percentage that minority group represents in the jury-eligible population. *Berghuis v. Smith*, 559 U.S. 314, 323 (2010).

¶8     However, even if we were to assume, for the sake of argument, that Smith had met his burden on the second prong to show that the representation of Black Americans in his jury array and panel was not "fair and reasonable," as we now explain, he has failed to establish the third *Duren* prong.  To be specific, Smith has not proven that any underrepresentation of Black Americans is due to systematic exclusion of this group from the jury selection process.  *See Duren*, 439 U.S. at 364.

¶9     Turning to the third prong of the test, a disproportionate representation of a distinctive group on one jury panel is not sufficient to prove systematic exclusion of that group.  *Id.* at 78.  Rather, to prove the third prong, a defendant must show either "a jury[-]selection process that in itself tends to exclude members of the underrepresented group, or a disproportionate representation of a group on juries over a period of time."  *Id.* at 77.

¶10     Smith first contends that he can demonstrate systematic exclusion of Black Americans, the third *Duren* prong, in the jury arrays in Waukesha County "by enduring underrepresentation" of Black Americans in those arrays over time.  In support, he states that the percentage of Black Americans in Waukesha County jury arrays in 2019 was 1.49 percent, in 2020 was 1.53 percent, and in 2021 was 1.6 percent.  Contrary to Smith's claim, these percentages of Black Americans in the jury arrays from 2019 through 2021 do not show a systematic exclusion of Black Americans from jury arrays.  The total percentage of Black Americans in Waukesha County, including those who cannot serve on a jury because they are under the age of eighteen, is only 2 percent.  This evidence does not support Smith's claim of systematic exclusion based on underrepresentation.

¶11 In further support of his argument that Waukesha County systematically excludes Black Americans from its jury-selection process, Smith asserts that two Wisconsin statutes—one excluding felons from serving on juries until their civil rights have been restored and one providing for jury arrays to be compiled from a Department of Transportation (DOT) list of people with driver's licenses and identification cards (DOT records)—resulted in systematic exclusion. *See* WIS. STAT. §§ 756.02 and 756.04(2)(a) and (b). This argument is both unsupported and against the weight of authority.

¶12 As to excluding felons whose civil rights have not been restored from the jury-selection process, Smith contends that "[t]he severe racial disparities in Wisconsin's criminal adjudication system combined with the state statute prohibiting felons from serving on juries implicates a criminal defendant's right to a jury drawn from a fair cross section of the population." However, Smith provides no legal authority to support his argument that the Wisconsin law excluding felons results in a constitutionally impermissible jury-selection process. In fact, this argument has been routinely rejected by courts. *See*, *e.g.*, ***United States v. Barry***, 71 F.3d 1269, 1273-74 (7th Cir. 1995); ***United States v. Foxworth***, 599 F.2d 1, 4 (1st Cir. 1979). Smith fails to meet his burden of demonstrating systematic exclusion of Black Americans based on state law excluding felons from jury service.

¶13 There is also no legal or evidentiary support for Smith's allegations that the use of DOT records results in the systematic exclusion of Black Americans from our jury system. No published Wisconsin case has addressed the analysis for the systematic exclusion prong. Therefore, we may look to persuasive authority from the Seventh Circuit and other federal courts that have ruled on this issue. For example, in ***United States v. Neighbors***, 590 F.3d 485 (7th Cir. 2009),

the Seventh Circuit rejected a systematic exclusion argument that alleged that "systematic inequities" had resulted from "choos[ing] venires from voter registration lists because voter registration lists generally underrepresent minorities in the community." *Id.* at 491. The court reaffirmed that *Duren* provides that the defendant has the burden to show underrepresentation due to systematic exclusion and concluded that, even where the venire lacked any Black Americans, the defendants failed to show that systematic exclusion resulted from choosing venires from voter registration lists. *Neighbors*, 590 F.3d at 491-92.

¶14 Smith does not persuade us that the use of DOT records results in underrepresentation of any group to an extent greater than if Wisconsin compiled jury lists from voter registration lists. In this case, as in *Neighbors*, there was "no evidence presented" that the statute authorizing the use of DOT records was improper or that a better source of data existed. Additionally, because the circuit court found that the percentage of Black Americans on the jury array was "very, very close to the actual representation [of Black Americans] in the population," Smith presented "absolutely nothing ... to demonstrate that third factor" of systematic exclusion." We agree with the court's analysis. Smith has not met his burden of establishing the third *Duren* prong.

¶15 In sum, Smith has failed to make a prima facie case that the jury array was not comprised of a fair cross-section of the population. He is not entitled to a new trial on this basis.

### *Trial Counsel's Motion to Withdraw*

¶16 Ten days before his trial was scheduled to begin, Smith filed a motion seeking to have his appointed trial counsel withdraw from representation and new trial counsel appointed. Smith requested that trial counsel withdraw "due

to a conflict with counsel about legal strategy moving forward." Although Smith complained generally of a lack of communication between him and his appointed trial attorneys, both Smith and trial counsel testified at hearings on the issue that Smith's reasons for the motion to allow counsel to withdraw were the racial differences between Smith and trial counsel and disagreements about trial strategy.

¶17    After holding a hearing on Smith's motion for counsel to withdraw and conducting an in-camera proceeding to delve into the issues, the circuit court denied the motion. The court explained that the motion was untimely—coming just ten days before the scheduled two-week jury trial. After his conviction, Smith again raised the withdrawal-motion issue. The court held two hearings at which Smith and trial counsel testified. The court subsequently denied the postconviction motion.

¶18    The United States and Wisconsin Constitutions guarantee criminal defendants the right to the effective assistance of counsel, and that right includes representation that is "free from conflicts of interest." *State v. Street*, 202 Wis. 2d 533, 541, 551 N.W.2d 830 (Ct. App. 1996). We review the denial of a motion to withdraw and substitute counsel for an erroneous exercise of discretion while considering a number of factors, including:

> (1) the adequacy of the court's inquiry into the defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case.

*State v. Jones*, 2010 WI 72, ¶25, 326 Wis. 2d 380, 797 N.W.2d 378, citing *State v. Lomax*, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988). "A discretionary determination 'must be the product of a rational mental process by which the facts

of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.'" *Lomax*, 146 Wis. 2d at 359 (citation omitted).

¶19     Here, the circuit court made an adequate inquiry into the bases of the motion: Smith alleged a general lack of communication between him and his attorneys, and his attorneys denied any lack of communication and indicated that Smith's primary complaint regarding trial counsel was the fact that they were not Black.  The court conducted a lengthy hearing, including an in-camera portion where Smith testified out of the presence of the State.  After Smith filed a postconviction motion, it conducted a "retrospective hearing as well."  The court concluded that Smith was not entitled to a new trial because the court properly exercised its discretion to deny the motion for counsel to withdraw and the "balance" of Smith's right to counsel against "society's interest in getting that trial done" did not "tip[] in favor" of allowing Smith to have new appointed counsel. *See Lomax*, 146 Wis. 2d at 360 (holding that court must "balance[] the defendant's constitutional right to counsel against societal interest in the prompt and efficient administration of justice").  The court noted that the victims objected to delaying the trial, which would have been necessary had the motion to withdraw been granted.  After an exhaustive inquiry into Smith's reasons for wanting his counsel to withdraw and new counsel appointed, the court determined that Smith's motion was untimely.

¶20     A circuit court's "decision to not permit an indigent defendant to get a new lawyer will not be overturned when the [r]ecord is devoid of evidence 'of a conflict that made counsel's continued representation untenable.'" *State v. Boyd*, 2011 WI App 25, ¶13, 331 Wis. 2d 697, 797 N.W.2d 546 (citation omitted).  Here, the record is replete with evidence that there was no insurmountable, irretrievable

breakdown in communication between Smith and his counsel. To the contrary, the court explicitly found the alleged conflict between Smith and his counsel was not "a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case." *Id.* at 359.

¶21 Based on the foregoing discussion, we conclude that the circuit court considered the proper factors in relation to the facts of record and reached a reasoned and reasonable conclusion. *Id.* Accordingly, the court acted within its discretion in denying the motion to withdraw and substitute counsel. Smith is not entitled to a new trial on this basis.

## CONCLUSION

¶22 Smith has failed to demonstrate that he is entitled to relief. He has not established that his constitutional right to a jury panel that represents a fair cross-section of the community was violated. He also has failed to demonstrate that the circuit court erred in denying a motion for his trial counsel to withdraw. Accordingly, we affirm his judgment of conviction and the circuit court's order denying his motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2023-24).